There is known to our law two *Page 408 
modes of acquiring titles to vacant land, with and without an entry; in this case however, entries are referred to. The defendant has the oldest grant, and in order to overreach this the plaintiff recurs to his entry. It seems to be the general understanding that, agreeably to the laws of North Carolina, warrants could not be divided, and part entered at one place and part at another. I shall say but little respecting this circumstance in the claim of the plaintiff, conceiving it not essentially necessary. Nor is it material to consider in what manner the plaintiff's entry should be made, further than to remark that the subsequent Acts of 1786, c. 20, and 1787, c. 23, could not render the entry invalid if it were good before. The Acts of 1777 and 1783 required entries to be made, and so did the act regulating military claims. But none of these acts have defined what shall constitute a special entry. It is left for the Court to collect the general view the legislature had in requiring an entry. Now, it seems to me that the intention of the legislature was to apprise the surveyor and others where the land lay, so as to enable the surveyor to survey and others to make entries. All the acts respecting the appropriation of vacant lands contemplate the idea that as the surveyor was directed to survey the oldest entry first, that the governor would issue a grant upon the first survey before a younger one. So that previous to the Act of 1786, c. 20, we find no trace of an idea with the legislature that they suspected an older grant would or had issued on a younger entry.
The idea of the law is, that the surveyor shall survey all entries without calling on the enterers to show their claims, as is evident from the Act of 1783, c. 2. § 19, as well as several other clauses to the same effect. The law did not contemplate that it was necessary for the surveyor to call on the enterer to show where the land lay. It thence results, that the entry should be sufficiently special to enable the surveyor to know where to survey it; and if others have, or wish to make entries, it ought to have such reasonable specialty as would enable them to steer clear of it; and to call on the surveyor to run it out first, so as to be able to avoid it. *Page 409 
If it has not these specialties it is as no entry at all. And no subsequent enterer ought in equity to be affected by it. The legislature acted on this equitable idea, in their Acts of 1786, c. 20, and 1787, c. 23. but in that they have not told us what kind of an entry shall be deemed special. Reason must tell us that it is such an entry as would inform the surveyor and the world at large where the land in general was intended to lie. Not so special that the boundaries might be known by the entry. Nor was it necessary to be thus precise when the surveyor is directed to survey the oldest first. And, from all the statutes, it evidently appears that he was not to run into older claims, but bound on them. But it is urged that, if the entry should be esteemed insufficient, the same end is obtained by the notice which the defendant's locator had. I entirely agree with the argument of the defendant's counsel in this respect, that the courts of law have gone far enough in permitting an entry to impeach a grant. I might say too far, but the law is considered otherwise. The act has prescribed what this notice shall be, an entry, and we are not authorized to admit a substitute.[1] In equity in some cases, and on caveats, it is done, but even then with great care. The last entry of the defendant supersedes the first, and it must therefore be thrown out of the case. The plat annexed to the grant does not seem to make an essential part of the grant, and therefore the alteration suggested cannot vary this case.[2]
The plaintiff has the oldest grant, and the most important inquiry in this case is, whether the entry of the plaintiff is a special one, as contemplated by the Act of 1786, c. 20, and 1787, c. 23. If it is, according to our practice, the plaintiff must prevail. It is said that the Acts of 1786, c. 20, and 1787, c. 23, must as to enterers be construed strictly. What is intended by this part of the argument of the defendant I am unable to say. If the argument supposes that the act designed to introduce a greater degree of strictness than what had been usually attached to an entry, I cannot agree with it; there is no evidence in the act itself, showing that it was designed as introductive of a new rule, as to the nature of *Page 410 
entries. Previous acts as well as the general sense of society had produced a settled distinction between special and vague entries.' Both have been defined, and if the legislature had not legislated upon this subject none but a special entry could have any effect. This act I consider as declaratory of former principles, and the rule of strict construction does not seem to apply. Particularly when we consider that the legislature had discovered by various antecedent acts their anxious solicitude that an elder enterer should procure a title, in preference to all others.
In relation to the specialty of the plaintiff's entry, it has been contended that it possesses on the face of it two special calls, on Little Harpeth River, and to lie above Tatum's line. It is admitted that these two calls cannot be complied with, as the nearest part of Little Harpeth is at least ten miles from the place in dispute. Supposing the call to lie above Tatum's line to be sufficiently special, the question occurs whether the other call can be abandoned. If there are different calls in an entry, and some be more durable and certain than others, it seems to me that the subordinate calls may be abandoned if the others are sufficiently descriptive. In making this discrimination we seem to conform to the character of the human mind, which is first and most steadfastly attracted by the most notorious and prominent objects. Where one or the other call must be abandoned, in general, a natural call would obtain a preference over an artificial one. Rivers, creeks, lakes, and mountains are, in the order of nature, more prominent than branches, springs, lines, and marks. If one or the other must be rejected, the enterer ought to adhere to the one of the greatest consideration. In this case but little doubt can exist that Little Harpeth River is a more prominent call than Tatum's line, admitting that it existed. A person seeing Reid's entry could not tell but Tatum might have other claims on Little Harpeth. He could never suppose that the entry was intended to adjoin a claim of Tatum's on West Harpeth. It has however been insisted that it was incumbent on the defendant to show that Tatum had a claim on Little Harpeth, if they intended to impeach the plaintiff's entry *Page 411 
on this ground. This position is believed to be untenable. The entry in itself should contain certainty, and it was incumbent on the enterer to word his entry in such a manner as to avoid ambiguity. An entry should never be so construed as that it might enable a person to hold at more than one place. There may be many tracts of Absalom Tatum's on Little Harpeth, for aught the Court or any other person knows. If this were the case surely the plaintiff could not adjoin where he pleased. Suppose Tatum had one tract on Little Harpeth, and this claim of the plaintiff's had been surveyed adjoining it above, there he might claim without the possibility of interruption. And, as this might have been the case, it would be unreasonable that an enterer by the ambiguity of his entry, should lay a subsequent one under the necessity of inquiring whether Tatum had a claim on Little Harpeth, when nothing in the entry could reasonably induce such an inquiry. Under this view of the subject, it seems that the entry is not such as to overreach the defendant's grant.
[1] 1 Cr. 71.
[2] Polk's Lessee v. Hill et als. acc.